FRANK C. HOLLINS, complainant and appellant,

*v.*

THE AMERICAN UNION ELECTRIC COMPANY, defendant, and FREDERICK K. DAY, receiver, respondent.

[Submitted July, 1904. Decided March 6th, 1905. Filed March 13th, 1905.]

Upon the evidence in this case—*Held*, that certain advances made by Hollins to the American Union Electric Company were made not as loans to the company, but in performance or part performance of certain promises made by him to his associates in the enterprise, and substantially as payments for his stock in the company.

On appeal from an order of the chancellor advised by Vice-Chancellor Stevenson, whose opinion is reported in *56 Atl. Rep. 1041.*

*Mr. Alan H. Strong,* for the appellant,

*Mr. Robert H. McCarter,* attorney-general, for the respondent.

. The opinion of the court was delivered by

PITNEY, J.

This is an appeal from an order of the chancellor, affirming the action of the receiver in disallowing a claim of Hollins, the appellant, against the insolvent corporation, based upon a promissory note for $25,459.29, made by the corporation on the eve of appellant's application for appointment of a receiver. The claim, as originally presented to the receiver, included not only the note in question, but also two additional notes, one for $1,000 and one for $987.01, all three dated October 24th, 1902, and alleged to have been authorized by the directors of the company on October 20th. After presentation of the claim to the receiver, the appellant withdrew from his consideration the two smaller notes, admitting that they did not represent indebtednesses of the company to him. Upon the hearing before the vice-chancellor the evidence had the effect of limiting his claim to certain advances made by him to the company, aggregating $24,000, and said to be included in the note for $25,459.29.

Hollins appears to have made sundry advances to the defendant corporation at different times, from its organization in June, 1902, down to and including October 21st in the same year. The company had an ostensible capital of $7,000,000, which was issued in exchange for ninety per cent. of the shares of another company, known as the Union Railway Power and Electric Company, that was incorporated in the spring of the same year with an ostensible capital of $6,000,000. Mr. Hollins, acting through others as his figure-heads, was the actual organizer and chief promoter of both companies, and was at all times in practical control of the officers and directors of both. Our examination of the evidence leads us to agree with the learned vice-chancellor that neither the promissory note,

nor the action of the board of directors of October 20th, 1902, has any evidentiary value in support of the claim of Mr. Hollins against the American Union Company, and that the burden rested upon him to show that the moneys claimed were in fact advanced as loans to that company. That burden, in our opinion, he has not sustained.

The capital stock of the American Union Company, like that of its predecessor, was enormously inflated, and as the result of certain remarkable financial operations, sufficiently detailed in the vice-chancellor's opinion, and all conducted under the guidance of Mr. Hollins, he secured upwards of $1,000,000 par value of American Union stock, for which he had paid a comparatively insignificant consideration. Even treating all the advances on which his present claim is based as a part of his payments for that stock, its cost to him was only a small fraction of its par value. While in form he did not receive this stock from the treasury of the company, in effect he did so receive it, the intermediaries being manifestly his mere "dummies." · His purpose, as disclosed by the evidence, was to make a profit out of the flotation of the stock; that is, that the small manufacturing concerns of which the company was the owner should be operated simply for the purpose of lending color of value to the enormous stock issues, and that the stock should be sold out "on the curb" for prices exceeding its cost to Mr. Hollins and his associates.

In furtherance of this purpose Mr. Hollins agreed with his associates to furnish whatever money was needed in the operations of the company, and to receive as his recompense the profits he could make by sales of the stock. We are satisfied that all of the advances included in the claim in controversy were made pursuant to this · arrangement. The circumstance that · he received his stock (if he did receive it) prior to the date of the advances is not convincing to the contrary, since the proceedings that eventuated in placing him in control of the stock certificates were manifestly contrived for the purpose of giving his stock the *status* of "full-paid" stock and were not deemed by him a satisfaction of his agreement with his as-

sociates as to "financing" the company. We are not called upon to adjudge that he remained legally liable as upon an unpaid subscription for stock, but merely to decide (as we do) that the payments in question were made by him to the company in performance, or part performance, of his promises to his associates in the enterprise, substantially as payments for stock of the company and not as loans.

It is strongly insisted that this view cannot reasonably be entertained with respect to the last advance of $1,000, which was made on October 21st, only five days before his application for appointment of a receiver. The evidence shows, however, that even after this sum was advanced, and on the very eve of the receivership, he made declarations to one of his associates inconsistent with the notion that he intended to repudiate his arrangement with them.

However, we are not here particularly concerned with the $1,000 advanced on October 21st, since we are satisfied from the evidence that that sum was not included in the note for $25,459.29, but was evidenced by the note for $1,000, the claim for which was abandoned below.

Counsel for the appellant argued that, upon the hearing before the vice-chancellor, the receiver based his defence to the appellant's claim on the ground that the $24,000 in question were paid by Hollins to the American Union Company as proceeds of the sale, "when issued," of stock in a proposed concern called the Federal, &c., company, intended as an off-shoot of the American Union Company; a ground inconsistent, as is claimed, with the defence eventually sustained by the vice-chancellor and by us approved. Our examination of the evidence convinces us that the appellant's point is not well taken; that the testimony introduced by the receiver was intended to demonstrate that the moneys in question were paid by Hollins in performance of his agreement with his associates with respect to the American Union stock; and that this must have been understood by Hollins and the counsel who represented him in the court of chancery. The vice-chancellor's intimation to the contrary, at one stage in the protracted hearings before him, was

Hollins *v.* American Union Electric Co.

based upon a misapprehension that was subsequently corrected by his review of the testimony.

The order of the chancellor should be affirmed, with costs.

*For affirmance*—THE CHIEF-JUSTICE, DIXON, GARRISON, FORT, PITNEY, SWAYZE, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY—11.

*For reversal*—None.